The PHŒNIX INSURANCE Co. *v.* WULF and wife.

*(Circuit Court, D. Indiana.* February 2, 1880.)

EQUITY PRACTICE—SERVICE OF SUBPŒNA—EQUITY RULE 13.—The thirteenth equity rule, which declares that the service of all subpœnas shall be by a delivery of a copy thereof, by the officer serving the same, to the defendant personally, or by leaving a copy thereof at the dwelling-house or usual place of abode of each defendant, with some adult person who is a member of or resident in the family, does not require the copy of the subpœna to be left with a person in the dwelling-house, but is satisfied by a service at the door, outside the dwelling-house.

SAME—MARSHAL'S RETURN—AMENDMENT.—Courts have the power to permit officers to amend their returns to both *mesne* and final process, and the power is exercised liberally in the interest of justice, especially when the rights of third parties are not to be affected by the amendment.

*McDonald & Butler,* for the marshal.

*Herod & Winter* and *Austin F. Denny,* for Bertha Wulf.

GRESHAM, J. The defendant Bertha Wulf owned certain real estate in Indianapolis which she conveyed, her husband joining, to a third person, who conveyed it back to her husband, Henry Wulf. The husband, the wife joining, then mortgaged the same property to the Phœnix Mutual Life Insurance Company to secure a loan. The mortgage showed upon its face that it was to secure a loan to the husband. The loan was not paid at maturity, and on the fifth day of December, 1876, the mortgage was foreclosed in this court. On the twelfth day of November, 1877, Bertha Wulf brought suit in this court to set aside her deed to the third party, his deed to her husband, and the mortgage of herself and husband to the insurance company, on the sole ground that she was a minor when she executed those instruments. The service in the foreclosure suit was after Bertha Wulf had attained her majority, and the decree against her was by default.

The marshal's return shows that the subpœna in the foreclosure suit was properly served on Henry Wulf, in compliance with equity rule 13. As to Bertha Wulf the return reads thus: "I served Bertha Wulf by leaving a copy for her with her husband." Some time after Bertha Wulf commenced her suit, as already stated, the marshal appeared and asked leave to amend his return so as to show that he had served the subpœna on Bertha Wulf by leaving a copy for her with an adult person, a member and resident of the family, to-wit: her husband, Henry Wulf, at her dwelling-house, or usual place of abode.

The defendant Henry Wulf occupied a building at the corner of Virginia avenue and Coburn street, in Indianapolis, both as a dwelling and a family grocery. In the lower story there were two rooms, the main room being occupied as a grocery, and the back smaller room for storage. These two rooms were separated by a hall, which was entered by a door from Coburn street, and also from Virginia avenue through the grocery. A stairway led from the hall to the second story, where the family dwelt, eating and sleeping. The hall and stairway were accessible in both ways, and were, in fact, approached in both ways. The deputy marshal found Wulf

in the grocery and there served the subpœna on him, and inquired for his wife, when the officer was informed that it was early in the morning and she was up stairs in bed, where the family lived. The officer then and there, in the grocery, handed to the husband a copy of the subpœna for his wife. Upon these facts was there a valid service on Bertha Wulf, under the thirteenth equity rule, which declares that the service of all subpœnas shall be by a delivery of a copy thereof, by the officer serving the same, to the defendant personally, or by leaving a copy thereof at the dwelling-house or usual place of abode of each defendant, with some adult person who is a member or resident in the family? It is urged by counsel that the officer handed to Henry Wulf a copy of the subpœna when he was not "at the dwelling-house or usual place of abode;" that the grocery room was as distinct from the residence in the upper story as if the two had been in separate buildings, wide apart. That construction of the rule is narrow and unreasonable. It is conceded that if the officer had handed the copy to the husband in the hall the service would have been good, because the upper story was approached only through the hall, and it was therefore connected with the dwelling.

There were but two ways of ingress to the residence or upper story; one from Virginia avenue, through the grocery, and the other through the door opening from Coburn street. The family passed in and out both ways, as best suited their convenience. A copy was left with one who understood its contents, and was likely to deliver it to the person for whom it was intended. The case of *Kibbe* v. *Benson*, 17 Wall. 625, is cited against the sufficiency of the service. That was an action of ejectment in the circuit court of the United States, for the northern district of Illinois, which had adopted the statute of Illinois relating to actions of ejectment. After judgment was entered for the plaintiff by default, the defendant filed a bill in equity to set aside the judgment on the ground that he had no notice or knowledge of the pendency of the suit, and for fraud. The Illinois statute required that in actions of ejectment, when the premises were actually

occupied, the declaration should be served by delivering a copy thereof to the defendant named therein, who should be in the occupancy of the premises, or, if absent, by leaving the same with a white person of the family, of the age of 10 years or upwards, "at the dwelling-house of such defendant."

On the trial of the equity suit, one Turner swore that when he called at Benson's house, to serve upon him the declaration, he was informed by Benson's father that Benson' was not at home, and that while the father was standing near the south-east corner of the yard adjoining the dwelling-house, and inside of the yard, and not over 125 feet from the dwelling-house, he handed him a copy of the declaration, explaining its nature, and requesting him to hand it to his son, after which the father threw the copy upon the ground, muttering some angry words. There was a conflict in the testimony, but the circuit court decided that even if the copy was handed to the father, as testified to by Turner, the service was not sufficient, and vacated and set aside the judgment which had been entered by default, and this decree was affirmed on appeal. In deciding the case the supreme court says: "It is not unreasonable to require that it [copy of the declaration] should be delivered on the steps, or on a portico, or in some outhouse adjoining to, or immediately connected with, the family mansion, where, if dropped or left, it would be likely to reach its destination. A distance of 125 feet, and in a corner of the yard, is not a compliance with the requirement."

Rule 13 must receive a reasonable construction. It does not require the copy of the subpœna to be left with a person in the dwelling-house; it is sufficient if the person who receives the copy is at the dwelling-house. The rule is satisfied by a service outside the dwelling-house, at the door, just as much as inside the house.

I think Bertha Wulf was in court when the decree of fore-closure was entered. This is not a motion to correct the pleadings, judgment or process. Courts have the power to permit officers to amend their returns to both *mesne* and final process, and the power is exercised liberally in the interest of justice, especially when the rights of third parties are not to

be affected by the amendment. In the exercise of a sound discretion they have allowed officers to amend their returns according to the real facts, after the lapse of several years, and when there is no doubt about the facts such amendments have been allowed after the officer's term has expired. *Adams* v. *Robinson,* 1 Pick. 461; *Johnson* v. *Day,* 17 Pick. 106; *People* v. *Ames,* 35 N. Y. 482; *Jackson* v. *O. & M. R.* 15 Ind. 192; *De Armand* v. *Adams,* 25 Ind. 455; Freeman on Executions, §§ 358, 359; Herman on Executions, § 248.

I think justice requires that the amendment should be allowed in this case.