### LANGENBERG HAT CO. et al. v. UNITED CLOTH HAT AND CAP MAKERS OF NORTH AMERICA et al.

(District Court, E. D. Missouri, E. D. June 11, 1920.)

No. 5152.

Injunction ⬅101(3)—Conspiracy by striking employés to commit unlawful acts.

Mass picketing by a combination of striking employés and others, for the purpose of forcing employers to adopt the policy of closed shop, accompanied by threats, abuse, domiciliary visits, and physical assaults on employés and potential employés, *held* unlawful, and enjoined.

In Equity. Suit by the Langenberg Hat Company and others against the United Cloth Hat and Cap Makers of North America and others. Decree for complainants.

Walter H. Saunders, of St. Louis, Mo., for plaintiffs.

C. J. Anderson and Bass & Bass, all of St. Louis, Mo., for defendants.

FARIS, District Judge. At a session of court held in St. Louis, Mo., within the district aforesaid, on Monday, June 7, 1920, the court delivered the following oral opinion:

I have had under advisement for some weeks the case of Langenberg Hat Company et al., Plaintiffs, v. United Cloth Hat and Cap Makers of North America et al., Defendants, No. 5152, in Equity. As far as the court is concerned, I have been in a condition of mind that would have enabled me to decide this case long since, but counsel for defendants took leave to file a brief four or five weeks ago, and up to this time I have never seen that brief. It may be a very good brief, but, not having seen it, I, of course, have been unable to read it. I cannot hold the matter up any longer. If counsel take leave to file memoranda of their views, it ought to be done in a speedy way, having reference to all the facts and circumstances.

Upon the trial of this case one plaintiff, Gram Headwear Manufacturing Company, had not suffered any such interference by means of pickets, or by means of any unpeaceful or unlawful acts on the part of any pickets, to warrant any holding in their favor upon that view. I was of the opinion, when the case of plaintiffs had been completed, that for this I ought to dismiss as to the Gram Headwear Manufacturing Company, and I at that time entered an order of dismissal. That order I think I shall set aside. I am setting it aside because repeatedly the United States Supreme Court has held that it is not necessary, in a conspiracy to violate the Sherman Act, the Anti-Trust Act of 1890 (Comp. St. §§ 8820–8823, 8827–8830), that there should be any overt act. Of course, picketing, in prohibited numbers, or picketing in an unpeaceful and unlawful way, would merely constitute overt acts.

A conspiracy was proved in this case without any question. Therefore I set aside the order heretofore made in this case, dismissing the Gram Headwear Manufacturing Company as a plaintiff, and reinstate it as such, for the reasons that I have given. It did not occur to me at the time that the decisions which I now have in mind affected the situation as to the Gram Headwear Manufacturing Company, notwithstanding the fact that I had only a week before gone over those very decisions with great care. I merely overlooked the application of them.

I think upon the merits that no necessity exists for any lengthy dissertation upon the law which applies to the facts adduced in evidence. Lately, this court, in the case of Kinloch Telephone Co. et al. v. Local Union No. 2 of International Brotherhood of Electrical Workers, 265 Fed. 312, took occasion to discuss some of the things which cannot lawfully be done by striking employés as well as many of the things which those employés may lawfully do. In that case I took occasion to lay down a test of what is lawful and what is peaceful,

by stating that to my mind the plain and simple language of the Clayton Act (38 Stat. 730) itself discloses what is lawful and what is peaceful; conversely, "he who runs may read" what is unlawful and what is unpeaceful.

The test which I stated in that case, and which I now repeat (and that test is almost in the language of the Clayton Act itself) could be put in the form of a question: Would any ordinary citizen be permitted to do the acts complained of in this case, if no strike, or labor dispute, existed? If he could do those things, absent a strike, then, of course, he could do them, present a strike; in other words, if any ordinary citizen, when no strike exists, can do a given act against the rights, person, peace, or property of another, and not commit thereby a breach of the peace, or an act of lawlessness, then the striking employé can do the same act when there is a strike existing.

Injunction, when brought by an employer against an employé reaches only such acts as fall without the pale of the test which I have stated above. In the face of so simple a rule, it is almost incomprehensible why men and women, possessing the capacity to reason from cause to effect, can so blind themselves with their own self-interests as to contend, in case of a strike, for the alleged right to outrageously violate the peace, person, property, and rights of others with whom their interests may for the time clash.

It is with regret that I say that it almost seems to be a renaissance, or harking back to the ancient rule, which has been tersely expressed in the maxim that "Might makes right." This rule antedated law; it is wholly subversive of law, and such a rule as this cannot exist in a country ruled by law. No government by law can exist in a country, or under conditions, wherein men cleave to the rule that "he can take who has the power and he can keep who can."

In this country a man or woman has the right to work for whom he or she pleases, for what wages and under what conditions he or she sees fit, to quit with or without cause, or with or without any sufficient cause (absent a contract for a fixed term, and then subject only to a civil action for damages), whenever he or she wants to quit. Any other rule would be peonage.

Conversely—and this seems sometimes to be forgotten—this rule ought to appeal to all law-abiding, fair-minded, and right-thinking men and women, that it necessarily follows that an employer ought to have the right to employ such persons, for such wages, and under such conditions as the employer sees fit, to discharge such employé with or without cause, or with or without sufficient cause, at any time the employer sees fit; again, of course, absent a contract for a fixed term, and then subject only to an action for damages as for a breach of such contract, and, of course, likewise subject to a compliance with such state or federal statutes touching employers and employés, and touching conditions under which employés may work in a factory, as the Congress or Legislature may have seen fit to pass.

So much is said without reference, of course, to the privilege, now solemnly accorded to employés by law, to combine peacefully and

lawfully for the purpose of producing an amelioration and betterment of conditions of labor, or to the laws which I have just mentioned having reference to the same subjects. Whether persons, or combinations of persons, not themselves employés, but who are trying to compel the employer (as the evidence conclusively shows in this case) to unionize, or form a "closed shop," of his business, may not by peaceful means and lawful persuasion bring about, or seek to bring about, such unionization, or such "closed shop," I need not stop to again consider; for, as I stated in the beginning, I went to some extent into that phase of the situation in the recent case of Kinloch Telephone Co. et al. v. Local Union No. 2.

I am unable to find that such peaceful means and lawful persuasions are among the facts in this case. Upon this phase I am constrained to adhere to what I said in the Kinloch Case touching the law, and to agree with what is said upon the same point in the cases of Kroger Grocery & Baking Co. v. Retail Clerks, etc. (D. C.) 250 Fed. 890, and Stephens v. Telephone Co. (D. C.) 240 Fed. 759. I repeat that the questions of peacefulness and lawfulness are not, as matters of fact, in issue here. I say this because the evidence utterly eliminates those questions from the discussion. I fully agree with the conclusions of fact on this particular point which were reached by my learned predecessor, who heard this case upon the application for a temporary injunction herein.

This case, by the great weight of the evidence, shows an outrageous condition of mass picketing, under a situation and condition which no stretch of the imagination can denominate as either peaceful or lawful. There were numerous instances of threats, abuse, and abusive language, of domiciliary visits and physical assaults upon and directed at employés and potential employés; that is, those who desired to become such. These I need not detail; suffice it to say that the record in this case simply reeks with things of this sort. I can hardly conceive of a more outrageous situation, in this behalf, than that which has been presented by the evidence adduced in this case.

The cases which I have cited, and many others with which the books are fairly filled, hold that the Clayton Act does not justify the doing of the things which the record in this case shows were done. Not alone were these unlawful and unpeaceful acts committed by defendants, or some of them, and those acting in concert and combination with them, before the issuance of the injunction in this case, but afterwards, while it was in force, in utter contempt of its prohibitions.

There are certain defendants, sued in their individual capacities, who were not served in this case, and who did not appear at all, by answer or otherwise. Against these, so far as concerns suing them in their individual personal capacities, I do not think the order that I shall make in this case ought to go. Whether they are not reached as members of the union, which I think ought to be enjoined, I need not here stop to consider; but I feel sure that I ought not to enjoin them in their personal and individual capacities.

Without further comment, I am of opinion that the temporary in-

junction in this case should be made perpetual. Let a decree be drawn accordingly.

As to the matter of an inquiry concerning the damages sustained by the plaintiffs by reason of defendants' unlawful acts, that will be referred to a master in chancery to be hereafter appointed, for his examination and report to this court.

The decree of a perpetual injunction will issue against all the defendants, except such as I have noted on this slip, which I hand to the clerk, and a decree as stated may be entered accordingly.