## NEW YORK, N. H. & H. R. CO. v. RAILWAY EMPLOYEES' DEPARTMENT, AMERICAN FEDERATION OF LABOR, FEDERATED SHOP CRAFTS, SYSTEM FEDERATION NO. 17, et al.

(District Court, D. Connecticut. March 23, 1923.)

No. 1614.

1. **Courts &⇒344—Jurisdiction in equity case held not affected by error in subpœna as to time for return.**

Objection to jurisdiction of a federal court of equity because of an error in the subpœnas issued, as to the time for their return by the marshal, *held* ineffective, under Rev. St. § 954 (Comp. St. § 1591), and equity rule 19 (198 Fed. xxiii, 115 C. C. A. xxiii), which permit amendment of such subpœnas, and where the rights of defendants have not been prejudiced.

2. **Injunction &⇒152—Defendants may be required by notice to appear for hearing before time for general appearance.**

Defendants may be brought into court for hearing of a motion by notice directed by the court and duly served before time fixed for their general appearance.

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Injunction ⟨KEY⟩144—Verified bill in suit involving labor dispute may be taken as application for injunction.**

Under Clayton Act, § 20 (Comp. St. § 1243d), requiring the application for restraining order or injunction in suits between employer and employees concerning terms or conditions of employment to be sworn to, the verified bill may be taken as the application, and together with affidavits submitted and other evidence offered may be considered, and the formal motion by counsel need not be verified.

**4. Injunction ⟨KEY⟩136(2)—Employer held entitled to preliminary injunction against striking employees.**

Evidence clearly showing persistent interference by striking employees with the business of their former employer by intimidation, assault, and abusive and indecent language, extending into the homes of new employees, *held* ground for a preliminary injunction in a suit by the employer.

In Equity. Suit by the New York, New Haven & Hartford Railroad Company against the Railway Employees' Department, American Federation of Labor, Federated Shop Crafts, System Federation No. 17, and others. On motion for preliminary injunction. Granted.

Bill of complaint by the New York, New Haven & Hartford Railroad Company against the Railway Employees' Department, American Federation of Labor, Federated Shop Crafts, System Federation No. 17, B. N. Jewell, et al. On motion for preliminary injunction. The complaint alleges, in addition to jurisdictional facts, that the Federated Shop Crafts No. 17, the name of the union on plaintiff's line of railroad, consisting of many thousands of members of subunions, known as International Associations of Machinists, Boilermakers, Blacksmiths, Metal Workers, Electrical Workers, and Car Men, made formal application to the United State Railroad Labor Board, created by the Transportation Act of 1920, for an increase in wages, and at about the same time plaintiff made similar application to the same board for a decrease in wages and as to other matters affecting employment; that the Labor Board, by its decision No. 222, effective October 1, 1921, decided such matters; that thereafter conferences took place between plaintiff and its employees regarding such employment, but without agreement. In February, 1922, both plaintiff and Federation System No. 17 applied to said Labor Board for a decision under the Transportation Act upon their differences and disputes, and that said Labor Board on June 5th rendered its decision No. 1036, effective July 1, 1922, which decision plaintiff was ready and willing to carry out, but that the defendants, including B. N. Jewell, as president, all of the international officers of such unions, and the employees of plaintiff's railroad, conspired together and went on strike July 1, 1922, repudiating the decision of said Labor Board and defying its judgment and findings upon said decision; that after the beginning of said strike defendants continued in their said conspiracy to prevent plaintiff from carrying on its business as a common carrier, and to prevent, by unlawful means, plaintiff's new employees from continuing in their employment with plaintiff.

The defendants, appearing specially, moved to dismiss plaintiff's bill, to revoke the temporary restraining order which had been granted by the court, without notice, and to dismiss the application for a preliminary injunction upon 1S grounds, which may be combined as follows:

(1) That the full name, citizenship, and residence of each of the defendants, as well as the citizenship of plaintiff, must be set forth in the process, or otherwise the court would have no jurisdiction herein, and equity rule No. 25 (198 Fed. xxv, 115 C. C. A. xxv) would be violated.

(2) That the process served upon some of the defendants directed the marshal to make due service and return before the 1st day of August, the process was dated the 29th day of July, and the defendants were required to appear and answer on or before the day on which the writ was returnable, or, in other words, on or before August 1st, which would be in violation of equity

⟨KEY⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

rule No. 12 (198 Fed. xxii, 115 C. C. A. xxii), and that the process was not in fact served and returned to the court until August 3d or thereafter.

(3) That under section 20 of the Clayton Act (38 Stat. at Large, p. 738 [Comp. St. § 1243d]) the restraining order was not properly issued, and that the verification of the complaint is vague and indefinite, and that neither an order nor a temporary injunction could be issued thereon, in accordance with equity rule No. 73 (198 Fed. xxxix, 115 C. C. A. xxxix).

(4) That the restraining order does not define the injury, nor state whether it is irreparable, or why it was granted without notice, under section 17 of the Clayton Act (Comp. St. § 1243a).

(5) That the order is, for various reasons, in violation of section 19 of the Clayton Act (Comp. St. § 1243c).

(6) That the order was issued in chambers, without it appearing in the record that the court was in session at the exact time shown in the order.

(7) That the application for the restraining order was not in writing and sworn to by the applicant, or by his agent or attorney, in accordance with section 20 of the Clayton Act.

(8) That the order did not show that plaintiff was engaged in interstate commerce or transporting the mail, except by reference to the verified bill of complaint.

Three hearings were had upon plaintiff's motion for a preliminary injunction, covering a period of 20 days, during all of which time the restraining order was in effect. At the last two hearings defendants were permitted to offer testimony on the question of fact as to the time or times when the subpœnas, after service by the marshals upon 20 or more of the defendants, had been physically filed by the marshal in the office of the clerk of the court. The court disposed of all of the above grounds of objections except two, viz. the date of return of the subpœnas to the clerk's office, and the alleged lack of a verfied application for the restraining order, no substantial question of law being raised therein. The two remaining grounds were principally urged by defendants.

The clerk of the court testified that papers from the marshal's office were delivered at his office practically every day; that he had no recollection as to when the subpœnas which had been served on 40 or more of the defendants were physically brought in to his office. The marshal testified to the same general effect. There was no record in either the clerk's office or the marshal's office as to the date when each subpœna was filed with the clerk. The docket showed that many defendants had beeen served, and in each instance on or before the date specified in the subpœna for such service. Counsel for defendants admitted that he represented specially all of the defendants thus shown to have been served. No question was raised as to the date of service, nor as to the truthfulness of the marshal's indorsement of such service on each subpœna. As to some of the defendants, new subpœnas were issued by the clerk and they also were served within the time directed by the clerk. The subpœnas required each defendant to make his appearance or answer, or other defense, within 20 days after service. Such time had not yet expired on the day of the last hearing on the motion. The marshal testified that his deputies were in the habit of reporting to the clerk that service had been made, then indorsing his return on each subpœna showing the date of service, and afterwards filing the subpœna with the clerk.

Plaintiff proved facts clearly tending to make out a prima facie case. It proved its incorporation as a railroad company and that it is carrying the mails. It proved in detail the aforesaid applications to and decisions by the Railroad Labor Board. It proved by a large number of exhibits the calling of the strike by the higher officers of the unions and the promulgation of the orders for such strike by the local officers of System Federation No. 17, the orders being relayed to various points on the railroad by the subordinate officers of the unions named as defendants.

The court denied the defendants' motion to dismiss and heard the case on the merits. Defendants declined to enter a general appearance, and the plaintiff's evidence was offered in the form of affidavits.

Charles M. Sheafe, Jr., of New York City, and George D. Watrous and Norman S. Buckingham, both of New Haven, Conn., for plaintiff.

Cornelius J. Danaher, of Meriden, Conn., and Arthur B. O'Keefe, of New Haven, Conn., appearing specially for defendants.

THOMAS, District Judge (after stating the facts as above).  [1] 1.  It appears from evidence produced by the defendants, under special appearance, that service was made upon some twenty of the defendants. The returns made by the officers making such service show that this was done on July 29 and 31, 1922.  The subpœnas were duly returned to the court by indorsement and subsequent filing.  In each instance such return was timely and within equity rule No. 12 (198 C. C. A. xxii, 115 C. C. A. xxii), cited by defendants.  The directions in the subpœnas to the marshal as to what he is to do and within what time he is to do it are not the same grammatically or legally as the directions in the subpœnas to the several defendants as to their appearances, answers, and other defenses.  These defendants have been properly served and are in court after proper notice.  Southern Oil Corp'n v. Waggoner (C. C. A.) 276 Fed. 487.

A return is defined by Stephen on Pleadings as being the account in writing made by the sheriff or other ministerial officer of the manner in which he has executed a writ.  Stephen (7th Ed.) p. 20.

Under section 954 of the Revised Statutes (Comp. St. § 1591) the subpœnas could, if there were any necessity for it, be amended as to the time of the return to be made by the marshal.  But there can be no prejudice to any defendant from those portions of the subpœna which are directed to the marshal that he should "make due service and return on or before August 1st."  This language could be construed to mean "make due service on or before August 1st and return," etc.

If there were any defect in the process, so that it seemed to be in need of an amendment, such amendment would be allowed as a matter of course under section 954.  Eberly v. Moore, 24 How. 147, 16 L. Ed. 612; In re Griggs, 233 Fed. 243, 147 C. C. A. 249; Cushing v. Laird, 6 Fed. Cas. No. 3,508; Fountain v. Detroit, etc., Ry. (D. C.) 210 Fed. 982; Mechanical Appliance Co. v. Castleman, 215 U. S. 437, 443, 20 Sup. Ct. 125, 54 L. Ed. 272; Nickerson v. Boiler Co. (D. C.) 223 Fed. 843; Phœnix Insurance Co. v. Wulf (C. C.) 1 Fed. 775, 778; Elson v. Town of Waterford (C. C.) 135 Fed. 247.

Equity rule No. 19 (198 Fed. xxiii, 115 C. C. A. xxiii) is mandatory that this court is to disregard any error or defect in the proceedings which does not affect the substantial rights of the parties.

[2] The parties are now before the court on a notice of motion directed by the court, and not by virtue of the process.  American Steel & Wire Co. v. Unions 1 and 3 (C. C.) 90 Fed. 598.

[3] 2.  Defendants contended further that under section 20 of the Clayton Act the court has no jurisdiction because the application for the restraining order or the injunction was not in writing and sworn to by the applicant or its agent or attorney.  In support of this point counsel calls attention simply to the motion for the injunction and temporary restraining order signed by solicitor for plaintiff.  This motion is not verified.  It is in the usual form, reciting that the plaintiff upon

the verified bill of complaint and affidavit filed therewith, moves the court for a temporary injunction. It contains the names of all of the defendants and their residences, and it specifies all acts sought to be enjoined. With the motion was submitted the bill of complaint, verified as to all allegations of fact necessary to give jurisdiction by the president of the plaintiff corporation and upon his own knowledge. There was also submitted with the notice of motion the affidavit of the general manager of plaintiff company, setting forth with considerable detail the direct results to plaintiff from about 6,000 of its employees having gone on strike July 1, 1922, because of their unwillingness to accept the awards established by the Labor Board. This affidavit recites particularly the difficulties of plaintiff in operating its railroad, and many cases of assault, intimidation, and violence growing out of the strike. It concludes by asking for a restraining order prior to the hearing herein.

The question is whether the verified bill may be considered as the application for the order within the meaning of section 20, or whether the motion signed by plaintiff's counsel may be singled out as being that application. It will be seen that, in order to comply with the other provisions of section 20 as to irreparable injury, the lack of an adequate remedy at law, and the description with particularity of the property or property rights involved, the motion signed by counsel, even if verified, would fall far short of satisfying the statute. It would in fact have to contain practically all of the matter which is set forth in the complaint. It is probable that, if a verified bill of complaint and the general manager's affidavit alone had been presented to the court in chambers, they would have been considered as ample fulfillment of the requirements of the statute. The lack of a verification on the motion papers signed by plaintiff's counsel does not appeal to me as destroying or affecting in any degree the form of the application as a whole, embracing all three documents. It would be unusual in our practice for an attorney to verify his motion papers, the same being intended merely to call to the attention of the court the nature of the application appended thereto. I am satisfied that the bill of complaint, together with the affidavit of the general manager calling for the contraordinary remedy of a restraining order, comply with the statute.

The established practice is to the same effect. In Gasaway v. Borderland Coal Corp'n (C. C. A.) 278 Fed. 56, at page 64, it appears from the opinion that the application consisted of the bill and affidavit showing certain trespasses on the company's rights and interference with interstate commerce. In Alaska S. S. Co. v. International Longshoremen's Ass'n (D. C.) 236 Fed. 964, the plaintiff made a motion on its verified bill for a temporary restraining order, which was granted. The court said, at page 966:

"Upon motion of the complainant, based upon the verified bill, a temporary restraining order was issued on the 7th of July, and the matter set for hearing on July 15th on application for temporary injunction."

In Dail-Overland Co. v. Willys-Overland, Inc. (D. C.) 263 Fed. 171, 21 affidavits were filed with the complaint showing acts of violence and intimidation, and a restraining order was thereon issued against the

manufacturing company defendant and against the International Association of Machinists, which were on strike. The defendants appealed from the final order granting a permanent injunction, but the order was affirmed in Quinlivan v. Dail-Overland Co., 274 Fed. 56, at page 64, in which the court said:

"The allegations of the original bill, as well as those of both cross-bills, * * * state a flagrant case of unlawful interference. * * * Taking, as we must, the allegations of fact contained in the bill and cross-bills at their face value, * * * the complaining parties * * * were entitled to relief."

It is evident from this case that the bill was the basis of the application for both the preliminary and the permanent injunction.

In City of Louisville v. Louisville Home Telephone Co. (C. C. A.) 279 Fed. 949, it appears from the opinion of Circuit Judge Denison that the telephone company filed a bill alleging in substance that the city had passed an ordinance fixing the telephone charges at a confiscatory rate, and moved for a preliminary injunction. This was granted, and the city appealed. The preliminary injunction was modified in immaterial respects. The decision plainly shows that the Circuit Court of Appeals considered the foregoing as an "application," for it said (page 956):

"It is a well-established rule in this court that, upon appeal from an order granting preliminary injunction, we will not examine the question of its issue, as if the original application had been to our own discretion, but will affirm the action of the trial court, if it seems to have been fairly within the range of the discretion which that court had a right to exercise."

The courts often hear some evidence before acting upon an application for a preliminary injunction. Thus in Tri-City Central Trades Council v. American Steel Foundries, 238 Fed. 728, the Circuit Court of Appeals made reference to the District Judge having seen and heard the witnesses. In Alaska S. S. Co. v. International Longshoremen's Ass'n, supra, the court refers to the testimony offered on the hearing.

In King v. Weiss & Lesh Mfg. Co. (C. C. A.) 266 Fed. 257, the Circuit Court of Appeals clearly indicates that the trial court heard testimony before granting the injunction. Objection was also made to the illegality of the restraining order in that it forbade "all interference" rather than "unlawful interference." The court said that this was a moot question, the restraining order having been shortly superseded by the preliminary injunction which was issued after a hearing, and that no injury appeared to have been done by the restraining order. In Davis v. Henry (C. C. A.) 266 Fed. 261, the court said on page 262:

"The bill and affidavits make out a case of violence, * * * which * * * amply justifies injunctive relief."

In Charleston Dry Dock & Machine Co. v. O'Rourke (D. C.) 274 Fed. 811, on page 812, the plaintiff moved for a preliminary injunction which was granted, and Judge Smith said:

"The motion has been made upon the bill of complaint and the affidavits thereto annexed and the affidavits filed on behalf of the defendants."

In Kinloch Telephone Co. v. Local Union No. 2, 265 Fed. 312, plaintiff moved for a temporary injunction which was denied, but the Dis-

trict Judge was reversed in 275 Fed. 241. The opinion of Judge Faris in the District Court shows that he granted an order to show cause why plaintiff should not obtain the relief asked for. That was evidently the "application" which was being considered by the court. Upon the hearing on this motion evidence was offered by both sides. In the Circuit Court of Appeals it was held that the law "fully warrants the issuance of a temporary injunction," and the case was remanded with instructions to issue a temporary injunction.

In Kroger Grocery & B. Co. v. Retail Clerks' I. P. Ass'n (D. C.) 250 Fed. 890, it seems to be clearly indicated in Judge Trieber's opinion that the court heard witnesses on plaintiff's motion for a preliminary injunction, which motion was granted. In Borderland Coal Corp'n v. International U. M. Workers (D. C.) 275 Fed. 871, the report of the case says:

"On hearing of application for temporary injunction. Temporary injunction ordered."

Judge Anderson said (page 872): "The bill avers and the proof shows," etc. The opinion further shows that the court received evidence on the application.

In Montgomery v. Pacific Electric Ry. Co., 258 Fed. 382, 169 C. C. A. 398, a preliminary injunction was granted, defendants appealed, and the judgment was affirmed. Judge Ross said (258 Fed. 383, 169 C. C. A. 399):

"The preliminary injunction here appealed from was preceded by a temporary restraining order, based upon a verified bill, which, in substance, alleges," etc.

And at 258 Fed. 385, 169 C. C. A. 401, he said:

"In response to an order to show cause why a preliminary injunction should not be granted, the matter came on for hearing, at which time there was presented to the court an affidavit of the defendants Montgomery" et al.

Another affidavit of General Manager Shoup was introduced. The court evidently received evidence on the application for the preliminary injunction. So also in Langenberg Hat Co. v. United Cloth Hat and Cap Makers (D. C.) 266 Fed. 127. It appears from the opinion of Judge Faris that the application for a temporary injunction was heard by a preceding judge. The opinion of Judge Faris refers throughout to the evidence presented before him, and he granted a perpetual injunction against interference with plaintiff's business.

In American Steel Foundries v. Tri-City Central Trades Council et al., 257 U. S. 184, 42 Sup. Ct. 72, 66 L. Ed. 189, the form of motion submitted to the District Judge on the original application for an injunction, together with a verified bill of complaint, was the same as in the case at bar, and there it appears, as here, that the motion was signed by the solicitor for plaintiff, but not sworn to.

[4] 3. I have read all of the exhibits. There are 169 of them, made by the president, the principal officers of the plaintiff, employees, both new and old, guards, outside witnesses, and others. There can be no question upon the merits, and aside from the technical points raised by defendants, but that this injunction ought to issue.

I cannot conceive of a clearer presentation of a case, or of a more complete case, calling for action to restrain and enjoin persons who are, not in a single or an isolated instance, but continuously and persistently interfering with plaintiff's business by threats, intimidation, and assault, abusive and indecent language, not only in the public highways, but in many of the workmen's homes, in the presence of their wives and children, and further subjecting the families to contumely and attempted disgrace, with a total lack of propriety and a total disregard of law and order. It is a revelation to read these affidavits. It is inconceivable that such a condition should exist or be allowed to exist in a state which prides itself upon its law and order. These men, I think, are misled and misinformed. It is impossible to believe that they wantonly violate the law so disgracefully.

There is not much that the court can say, except in condemnation of all the things that are testified to in these affidavits. Among them is one made by the widow of a prominent attorney, whose son was trying to earn money enough to put him through school and college. She was intimidated in the middle of the night while alone with her daughter. Such acts it is impossible to characterize. One could comment very drastically upon each of these affidavits. There are no extenuating circumstances possible to understand which would in the slightest degree lessen the conclusion that any court or any unbiased or unprejudiced person would reach after reading these affidavits. These men do not attempt to intimidate a man alone on the street or at his home, but they are in groups, always in groups. It seems to me it must indicate that they are cowardly. A man can fight it out singly with a man, an individual, but he cannot fight it out with six or a dozen. Everybody has an absolute right to go to work, and no one has the right to interfere with him by threat, or by abuse, or by using dirty, vile language in the presence of the wife and children, or by plastering the sidewalk of a man's home with names. Where they get the idea that they have a right to do this thing, just because they are strikers, is past comprehension. They have concededly a perfect right to quit work, but the management says that they want to protect the public in the operation of trains, to protect the safety of the public. People traveling to-day have a right to have something to say about this thing.

The management said in their statement of July 20th:

"The test is: What are a worker's rights when no strike exists? Whatever they may be, he has the same rights during a strike."

Nothing is taken from him because some or all of his fellow workers quit. Among these rights are the following:

"To be at his work, at his home, or to go between work and home, without being threatened, intimidated, assaulted, or even offensively spoken to or followed by groups of persons."

How true that is, and yet how wantonly it has been violated all over the state! We could overlook an isolated case, but it has occurred all over the state—at Stamford, Bridgeport, Waterbury, and Danbury. In Hartford, a poor fellow trying to get away from the crowd jumped on a freight train, and they followed him and beat his knuckles, trying to

make him fall between the cars. Things like that, absolutely beastly and malicious, have occurred.

Further: "To have his home and family free from molestation by gesture or language intended to insult or intimidate"—said the management. There are many instances where wives and children have been insulted by dirty language and intimidation. Wives have been told that, if they did not keep their husbands at home, the latter would be killed some day.

Further: "To be free from any talk or argument forced upon him against his will." As I understand the opinions of the Supreme Court, men on strike have the right to persuade employees and would-be employees to join them in it; that does not mean persuading a man by intimidation against his will, nor invading his home in the middle of the night and threatening him, or threatening his wife by telling her, if she did not keep him at home, she would wake up some morning and find him dead—that they would kill him. There were many actual assaults.

The management says in its circular:

"The company has the same rights as when no strike is on to run its trains, to maintain its property free from interference or trespass by those previously in its employ."

The evidence here is conclusive, and shows beyond a reasonable doubt that destruction of property has been of such a nature as to create danger in the operation of trains, tampering with tracks, cutting air hose, breaking windows, etc. They say:

"These are some of the rights which the company is seeking to protect by the restraining order which the court has granted."

This is a dispute between the employees of the company and the United States Railroad Labor Board. The board made a certain ruling, and the company was under obligations to the public to operate its trains as nearly on time as possible and with safety to the public. It is inconceivable that in this so-called land of steady habits and law and order such a condition as these affidavits disclose should exist, a contemptible disregard of personal rights, a contemptible disregard of property rights, and an utter disregard of common decency toward women and children.

In commenting upon this situation, which calls for restraint, I have tried to restrain myself; but I think that all I have said respecting it is justified. Counsel for defendants have raised many technical questions, and the court has ruled respecting them, and they may appeal. They have a right to appeal.

Upon the merits of this cause a preliminary injunction may issue. So ordered.