## KING et al. v. WEISS & LESH MFG. CO.

(Circuit Court of Appeals, Sixth Circuit.   June 11, 1920.)

### No. 3383.

1. **Injunction** ⟨key⟩101(3)—**Acts of white strikers, which would intimidate colored workers, may be restrained, though they would not intimidate white men.**

   Where white workers in plant struck, acts of intimidation which prevented the colored employés from working may be restrained, although such acts would not necessarily have prevented white workers from continuing in employment; the case being one of intimidation, and the timid being entitled to protection against unlawful threats and intimidation, even though the acts would not be sufficient to affect bolder persons.

2. **Appeal and error** ⟨key⟩996, 1009(1)—**Inferences from evidence for trial court; findings not disturbed, save in clear case.**

   On appeal from a decree enjoining interference with and intimidation of nonstriking employés, the fact findings of trial judge will not be overturned, save in a clear case, and his inferences as to what constituted intimidation by white workers of colored workers will be deferred to.

3. **Injunction** ⟨key⟩128—**Finding that colored workmen were intimidated held warranted.**

   A finding that colored workmen were intimidated and prevented from working *held* warranted, although such workmen, who made affidavits as to intimidation, repudiated the same when called before a public meeting of strikers.

4. **Appeal and error** ⟨key⟩1043(5)—**Unlawful restraining order against strikers harmless.**

   Although the first restraining order against strikers was invalid, being issued upon a vague and general showing, and not in compliance with Clayton Act, § 17 (Comp. St. § 1243a), yet where it was superseded by a preliminary injunction, and there was no showing of any injury by the restraining order, the issuance of the order, which had become moot, will be treated as harmless.

5. **Injunction** ⟨key⟩150—**Restraining order should be special.**

   As Clayton Act, § 19 (Comp. St. § 1243c), requires an order restraining strikers to be in reasonable detail, a general order against all unlawful interference with nonstriking employés is too broad, not clearly pointing out what was forbidden.

6. **Injunction** ⟨key⟩101(1)—**Right to conduct business is protected as a property right.**

   The right of an employer to keep his business running, notwithstanding the strike of some employés, is a property right, and will be protected, although Clayton Act, § 20 (Comp. St. § 1243d), forbids the issuance of an injunction in labor disputes, etc., except in case of injury to property or property rights.

7. **Courts** ⟨key⟩85(1)—**District Court rule, requiring defendant to make deposit to secure clerk fees, cannot be reviewed on appeal.**

   District Court rule, requiring defendants to make a deposit to secure clerk fees before filing a defense, which was enforced against them, cannot be attacked on appeal by defendant from an adverse decree, but must be brought to the appellate court, if at all, by some direct challenge.

8. **Courts** ⟨key⟩76—**Power to require defendants to make deposit to secure clerk fees rests with the District Court.**

   The power to make a rule requiring defendants to make a deposit to secure clerk fees before filing a defense rests with the District Court, and it will be presumed that the court gave due weight to all considerations in promulgating rule.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Bill by the Weiss & Lesh Manufacturing Company against E. R. King and others. From a decree enjoining defendants from continuing a course of intimidation and threats in promoting a strike, they appeal. Affirmed without prejudice to modification.

R. G. Brown, of Memphis, Tenn. (R. G. Brown, of Memphis, Tenn., on the brief), for appellants.

Phil M. Canale, of Memphis, Tenn. (Holmes & Canale, of Memphis, Tenn., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

PER CURIAM. [1, 2] The court below granted an injunction restraining the appellants from continuing a course of threats and intimidation in promoting a strike against the plaintiff below. This company had some 150 employés, of whom about 20 were white and about 130 were colored. Most of the white men joined in the strike and picketed the plant. The next day most of the colored men did not go through the picket lines, and the plant was shut down. Immediately upon the granting of the preliminary restraining order and the assurance that they were thereby protected, the colored employés generally returned, and the plant was continued in operation. The substantial complaint now made is that the weight of evidence was against the existence of any violence, or intimidation, or unlawful threats, but, on the contrary, showed that the strikers kept within their legal rights, whether measured by the Clayton Act (section 20, Act Oct. 15, 1914 [Comp. St. § 1243d]), or by the general principles independently applicable. More specifically, the complaint is that the District Judge gave undue weight to the fact that the strikers and the pickets were white men and the intimidated employés were colored; that he considered, as constituting unlawful intimidation, words and acts to which there would have been no rightful objection, if addressed to or used against white men; and thereby held that, in such cases, the defendants' rule of conduct must be varied according to the color of the nonstrikers. We do not so interpret the action of the District Judge. Whether or not we can take judicial notice ourselves of the supposed fact, certainly we cannot disregard the finding of the trial judge that it is a fact that, in that community and at the time in question, speech and action by white men would intimidate and terrify the typical colored laboring man, when the same things would not have serious effect upon the typical white laborer. The question is not one of color; it is one of individual or class intimidation. As was said by Judge McPherson, in Atchison Co. v. Gee (C. C.) 139 Fed. 582, 584:

"One man can be intimidated only when knocked down. But the peaceful, law-abiding man can be and is intimidated by gesticulations and by menaces. * * * Perhaps such a man * * * may be a timid man; but such a man is just as much entitled to go and come in quiet, without even mental disturbance, as is the man afraid of no one, and able, with or without weapons, to cope with all comers. The frail man, or the man who shuns disturbances, or the timid man, must be protected."

Not only must we apply the familiar rule that we will not overturn the fact findings of the trial judge, save in a very clear case, but we must recognize that a judge who has lived a lifetime in a community, and knows its atmosphere and feelings and prejudices, is more competent than we are to draw a correct inference as to what is and what is not intimidation as against one class in that community. As we said in Toledo v. Toledo Rys. Co., 259 Fed. 450, 453, 454, 170 C. C. A. 426, referring to our reluctance to overrule a finding of fact:

"Especially must that be true where the rightfulness of the conclusion depends largely upon that general knowledge possessed by all citizens of the community, including the judge, and which cannot be reproduced in the printed record."

[3] The finding that there was unlawful intimidation depends, not only upon the view which the judge took of the effect of the characteristic timidity of the colored laborers, but also upon his view of the credibility of certain of the colored witnesses. When they returned to work, they were given an increase of pay, and they then made affidavits showing some acts and some threats of physical violence. Later some of these same affiants were called before a public meeting of strikers, and, when interrogated, denied their former statements, and expressed hearty sympathy with the strike. The defendant insists that the judge should have rejected their first affidavits, because evidently influenced by their increase in pay, and should have accepted their later statements. We cannot say he was wrong in thinking that the earlier statements were less likely than the later ones to be the result of undue pressure, nor in concluding that the facts of stopping work when a picket line appeared, and of resuming work as soon as the injunction issued, were, after all, very persuasive upon the issue whether the first quitting of work was voluntary, or was the result of intimidation and fear.

[4] The first restraining order was issued upon a showing which was vague and general; and the restraining order was subject to special criticism for the reason that it forbade "all interference" with plaintiff's workmen, rather than "all unlawful interference," which was the language of the later orders. It also lacked compliance with some of the provisions of section 17 of the Clayton Act (section 1243a). However, any criticism on the form of this restraining order is now moot. ·.It was very shortly superseded by the preliminary injunction, issued after a hearing, and that, in turn, has been superseded by the permanent injunction. It does not appear that any injury was done by the restraining order, as distinguished from the later injunctions, or that the due preservation of any right requires present attention to this criticism.

[5] The preliminary and final injunctions enjoined, not only threats and intimidation against the workmen, but also "all unlawful interference" with them. Such general language is not advisable in an injunction order of this kind, since it leaves the door open for controversy, both as to what is interference and as to what is unlawful. Doubtless words of general import must sometimes be used so as to give an order its due breadth; but we think that, in most cases, more

distinctive words than these can be selected, and the defendants thereby be more accurately informed as to what is forbidden. This is also the effect of section 19 of the Clayton Act (section 1243c)—"in reasonable detail." The record does not show any specific objection by defendants to the language of the injunction in this respect, or whether any modification in this particular would now be of practical importance. If the parties think it would be, our present order of affirmance will be without prejudice to any such modification which the trial court, on due application, may think proper to make.

[6] We understand defendants' counsel also to take the position that, since section 20 of the Clayton Act prohibits an injunction, excepting in case of injury to property or property rights, the issue of the injunction was in conflict with this act, because the right of the plaintiff to continue its business, free from unlawful obstruction, was neither "property" nor a "property right." There is no sufficient basis for this contention. The Clayton Act did not undertake to make new definitions of "property" and "property right." It used these terms in their then accepted and well-understood definitions. It was dealing with the fact that between the recognized property right of the employer to conduct his business and the other recognized right of the employés to strike, more or less conflict would arise; and it was prescribing the kind and degree of injury to this employer's right which should be deemed rightly appurtenant to the employés' conflicting right, and which should therefore not be deemed unlawful. No court has held, since the passage of the Clayton Act, so far as we find, that it was intended to forbid an injunction in aid of an employer's right to keep his business running, in any case where the injury to that right, which the defendants were inflicting, is beyond the limits which the act purports to authorize. That the right to prosecute a lawful business without unlawful obstruction is either property or a property right has always been recognized, and is at the foundation of equity jurisdiction in this entire class of cases. It is sufficient to cite Hitchman v. Mitchell, 245 U. S. 229, 38 Sup. Ct. 65, 52 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461, as an example of the unquestioned acceptance of this basis of jurisdiction.

[7, 8] Complaint is also made because the trial court enforced against the defendants the existing District Court equity rule, which requires a defendant to make a deposit to secure clerk fees in advance before his papers in defense may be filed. Such a question cannot be collaterally raised, on such an appeal as this, but must be brought to this court, if at all, only by some direct challenge. While the clerk is compelled to collect his fees at the time the services are performed, and while an advance deposit may be the only practicable method by which he can do so, yet, when we consider that the defendant is brought into court and compelled to defend, and that all services rendered generally in a case by the clerk are chargeable, in the first instance, against plaintiff and his cost deposit, it may well be that only a comparatively small deposit should be required from defendant. However, the power to make a rule on this subject rests with the District Court, and it is to be presumed that due weight has been given to all

the considerations affecting the requirements embodied in this rule. If interested counsel or parties think otherwise, doubtless the District Court will entertain a direct application to modify the rule, and if this court has any reviewing power, it can then be invoked in some suitable manner.

While the modification which we have suggested in the language of the decree below may not be of practical importance, we cannot be sure of the contrary. For this reason, and as the appellants have already paid the substantial costs of this court, we award no further costs to either party.

The decree below is affirmed without prejudice to modification as herein specified.