QUINLIVAN et al. v. DAIL-OVERLAND CO. et al.

(Circuit Court of Appeals, Sixth Circuit. July 19, 1921.)

No. 3434.

1. Courts ⬙322(2)—Bill held not to show on its face that defendant should be aligned with plaintiff, so as to defeat diversity of citizenship.

In a suit by a North Carolina corporation against a Virginia corporation, from which it had contracted to purchase automobiles and parts, and an Ohio corporation manufacturing such automobiles and parts, the Ohio corporation's striking employees, and others, for an injunction, the bill *held* not to show on its face that the Virginia and Ohio corporations, or either of them, should be aligned with plaintiff, thus defeating diverse citizenship, where it alleged that the Ohio corporation had closed its plant and refused to reopen it in spite of plaintiff's demand,

and that the strike had created a reign of terror, which might make it to the Ohio company's interest to let its contracts be partially unfulfilled.

**2. Injunction ☞9—Bill held to present justiciable question whether or not plaintiff had any interest in the matter sought to be enjoined.**

In a suit by a North Carolina corporation against a Virginia corporation, which had contracted to sell it automobiles and parts, and an Ohio corporation, which manufactured such automobiles and parts, striking employees, and others, to enjoin interference with the operation of the factory, where the bill asserted a right and interest in plaintiff to compel the carrying out by the Ohio corporation of its contract with the Virginia corporation, it presented a justiciable question whether or not plaintiff was right in such contention.

**3. Injunction ☞119—Cross-bill for injunction held properly filed.**

In a suit by a North Carolina corporation against a Virginia corporation, which had contracted to sell it automobiles and parts, an Ohio corporation, manufacturing such automobiles and parts, striking employees, and others, to enjoin interference with the operation of the factory, a cross-bill by the Virginia corporation for the same relief was properly filed.

**4. Courts ☞317—That corporations had same vice president held not to show identity of interest.**

That a Virginia corporation, filing a cross-bill against an Ohio corporation, its striking employees, and others, had the same vice president as the Ohio company, did not alone show identity of interest, defeating diversity of citizenship.

**5. Appeal and error ☞837(3)—When bill and cross-bill taken as confessed, allegations taken at their face value.**

Where a bill and cross-bill to enjoin interference by striking employees and others with the operation of a factory, which stated a flagrant case of unlawful interference with the operation of the factory, were taken as, confessed, their allegations must be taken at their face value on appeal, and the court cannot speculate as to what the result would have been, had the case gone to trial on its merits.

**6. Injunction ☞21—Relief not denied because plaintiff's contract with one of defendants revocable, when not revoked.**

In a suit by one having a contract for the purchase of automobiles and parts to enjoin interference by striking employees and others with the operation of the automobile factory, the fact that its contract was revocable at will did not defeat its right to relief, where neither party had attempted to revoke the contract, and it was not obliged to do so.

**7. Injunction ☞21—Expiration of contract with one defendant before final order held not to defeat relief.**

In a suit by one having a contract for the purchase of automobiles and parts against the other party to the contract, the manufacturer of the automobiles and parts, its striking employees, and others, to enjoin interference with the operation of the factory, the right to an injunction was not defeated by the expiration of the contract term before the final order was made, where it did not affirmatively appear that plaintiff had obtained all the automobiles and parts called for by the contract, and the bill had been taken as confessed before the contract expired.

**8. Courts ☞354—Failure to comply with rule as to continuance held not to defeat jurisdiction to make final order.**

Under equity rule 56 (198 Fed. xxxiv, 115 C. C. A. xxxiv), requiring causes to be placed on the trial calendar on the expiration of the time for taking depositions, which under rule 47 (198 Fed. xxxi, 115 C. C. A. xxxi) runs from the time the cause is at issue, lack of formal compliance with rule 57, relative to the continuance of causes on the trial calendar beyond the term, did not deprive the court of jurisdiction to make a

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

final order at a subsequent term, especially where it made a formal order continuing to the next term all pending cases, motions, and matters.

**9. Injunction ☞101(1)—Right to keep business running is "property right," within statute limiting injunction in labor disputes.**

The right of an employer to keep his business running is a "property right," under Clayton Act, § 20 (Comp. St. § 1243d), forbidding injunctions in cases between employers and employees, etc., unless necessary to prevent an irreparable injury to property or to a property right, etc.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Property Rights.]

**10. Injunction ☞118(4)—Bill and cross-bills held to show that there was no adequate remedy at law.**

In a suit to enjoin striking employees and others from interfering with the operation of a factory, allegations of the original bill and the cross-bills as to the irresponsibility of certain of the defendants *held* to show sufficiently that there was no adequate remedy at law.

**11. Injunction ☞190—Not erroneous because prohibiting peaceful persuasion or picketing.**

Where at the time a final order was made granting a permanent injunction against interference with the operation of a factory in connection with a strike, there was no longer any controversy between the employer and its employees respecting terms and conditions of employment, and the plant was running at full capacity and full production, and the strike had long ceased to exist, except for certain annoying manifestations on the part of a comparatively few people, who·could no longer be regarded as employees, the final order was not erroneous, because it enjoined peaceful persuasion and peaceful picketing.

**12. Injunction ☞104—Against striking employees and others held not to violate Clayton Act.**

A final order granting a permanent injunction restraining striking employees and others from interfering with the operation of a factory *held* not to violate Clayton Act, § 6 (Comp. St. § 8835f), providing that the existence and operation of labor organizations, etc., is not forbidden, and that such organizations and their members shall not be held to be illegal combinations or conspiracies in restraint of trade under the antitrust laws.

**13. Injunction ☞114(4)—In suit to enjoin interference with operation of factory, another manufacturer held properly made a defendant and permitted to file a cross-bill.**

In a suit against an automobile manufacturer, its striking employees, and others for an injunction, where the automobile manufacturer in its answer alleged as one reason for its inability to operate that a manufacturer of starting, lighting, and ignition equipment, with which it had contracts, was unable to comply with its contracts because of a strike, and asked that such other manufacturer be made a party defendant, it was properly made a defendant and permitted to file a cross-bill for an injunction against interference with the operation of its plant; there being the necessary diversity of citizenship.

Appeal from the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Suit by the Dail-Overland Company against John J. Quinlivan and others, in which various other parties filed cross-bills. From a final order granting a permanent injunction (263 Fed. 171), the defendant named and others appeal. Affirmed.

Rob V. Phillips, of Toledo, Ohio (Daniel L. Cruice, of Chicago, Ill., on the brief), for appellants.

George D. Welles, of Toledo, Ohio (F. C. Harding, of Greenville, N. C., and Tracy, Chapman & Welles, of Toledo, Ohio, on the brief), for appellee Dail-Overland Co.

Benjamin T. Batsch, of Toledo, Ohio (James E. Kepperley and Rathbun Fuller, both of Toledo, Ohio, on the brief), for appellee Willys-Overland Co.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

PER CURIAM. Appeal from an order granting permanent relief in a strike injunction case. The original bill was filed by the Dail-Overland Company, which is a corporation organized under the laws of North Carolina, is a citizen and resident of that state, and engaged in the distribution and sale of automobiles and automobile parts and equipment. The defendants were (a) the Willys-Overland Company, a corporation organized under the laws of Ohio, a citizen and resident of the Western division of the Northern district of Ohio, and engaged in manufacturing and selling automobiles and automobile parts in that district and division; (b) the Willys-Overland, Incorporated, a corporation organized under the laws of Virginia, a citizen and resident of that state, having its principal office and place of business at Toledo, Ohio, and being the organization by which the automobiles and parts manufactured by the Willys-Overland Company were marketed; (c) Toledo Lodge. No. 105, International Association of Machinists, an unincorporated labor union, having its principal place of business at Toledo, Ohio, many of its members being employees of the Willys-Overland Company; (d) the Automobile District Council, an unincorporated association composed of sundry unions and members thereof, whose members are engaged in sundry trades connected with the automobile industry in Toledo, where it has its principal office, many of its members being employees of the Willys-Overland Company; (e) a large number of individuals, including officers of one or the other of the two last-named defendants, and organizers and business agents of different labor unions. For convenience we shall refer to the Willys-Overland Company as the "Overland," to the Willys-Overland, Incorporated, as the "Overland Inc.," and the Toledo Lodge, the Automobile District Council and the individual defendants as the union and labor defendants. All were residents and citizens either of the district and division in which the suit was begun or of a state other than North Carolina.

The bill, which was filed June 5, 1919, is elaborate in statement; its substance, sufficient for present purposes, is this: The Overland Inc. had a contract with the Overland Company for the purchase from the latter of all of its product manufactured and bought by the latter during the year 1919. Plaintiff had a contract with the Overland Inc. for the purchase during the period from January 4, 1919, to October 31, 1919, of 2,400 Willys-Overland automobiles, subject to allotment during the season on the basis of monthly production, and to ratable reduction in case sufficient automobiles were not manufactured for the Overland Inc. to enable it to meet all its contracts.

The agreement also provided for the purchase of automobile parts at certain discounts. Plaintiff had the sole right to sell and distribute these automobiles and parts in certain counties of North Carolina and South Carolina, respectively. The bill further alleged that shortly before May 8, 1919, certain labor agitators, including the so-called union and labor defendants, entered into an unlawful combination and conspiracy in restraint of trade and commerce in automobiles and automobile parts among the different states of the Union, in furtherance of which they conspired to prevent and restrain all interstate commerce in automobiles and automobile parts manufactured, purchased from and shipped by the Overland Company, and to that end demanded of that company impossible terms and conditions of employment, including closed shop and control by labor organizations; the controversy culminating in a strike at the Overland Company's plant at Toledo, Ohio, on May 8, 1919, its reopening on May 26th, and continued operation until June 3d, when it finally closed because of its inability to continue operation in the face of the strike and in lack of police protection. As the result of the strike plaintiff received but a small portion of its May allotment of automobiles, and none whatever for the month of June. Plaintiff accordingly, when the bill was filed, was entirely sold out of automobiles and short of necessary supplies and parts. Plaintiff had an effective selling organization, maintained at a large monthly expense, a valuable business and good will yielding large profits, which would be lost by the failure to obtain automobiles and parts under its contract. It will be noted that plaintiff had no contract with the Overland Company. In support of its claim to relief, the bill stated that previous to the execution of the contract the Overland Inc. publicly gave out and stated to plaintiff and its other dealers that there would be produced for distribution among such distributors, including plaintiff, in the year 1919, 180,000 automobiles, and (on information and belief) that such statements and representations were made by the Overland Inc. "with the knowledge and consent of the defendant Willys-Overland Company, and in consequence of and pursuant to representations and statements made by said Willys-Overland to said Willys-Overland Inc. that the defendant the Willys-Overland Company proposed and intended to manufacture during the year 1919 for delivery to said Willys-Overland Inc. at least that number of automobiles." The bill alleged that it was the duty of the Overland Company to continue in operation, and a demand by plaintiff that it do so, and its failure to comply.[1]

---

[1] The allegation is this: Plaintiff further says that, notwithstanding the failure of the mayor and police force of the city of Toledo to perform their duty and fulfill their promises to furnish adequate police protection to the Willys-Overland Company and its employees, it was and is the duty of said the Willys-Overland Company to continue in operation and to obtain protection through the courts or otherwise for itself and its employees who are desirous of remaining at work, from intimidation, threats, assaults, and violence of all kinds by said defendant unions and their members and fellow conspirators, and that plaintiff has served a demand upon said defendant the Willys-Overland Company and also upon the defendant the Willys-Overland Company [Inc.?] that such steps be taken by said defendant, but that said

On June 9th, four days after the filing of the original bill, an order was made, after notice to appellants, reciting the inability and failure of the Overland Company to perform "its contract obligations with complainant" by reason of the riotous, disorderly and intimidating conduct of the union and labor defendants, and enjoining the latter from interfering with the conduct of the business by the Overland Company except by peaceful persuasion. An elaborate system of picketing, under specific limitations, was provided by the order. The next day, by leave of court, the Overland filed its answer and cross-bill, admitting and alleging in detail each of the facts set up in the original bill, and asserting its willingness to continue operation under police protection, excepting, however, the allegation that it could and should have continued in operation, notwithstanding the efforts of the labor and union defendants to close the plant. It also alleged, as another reason for its inability to operate, that the Electric Auto-Lite Corporation (a Delaware corporation), with which it had contracts for starting, lighting, and ignition equipment and otherwise, was unable to comply with its contracts because of a strike against its plant of the same general nature as that directed against the Overland plant. It accordingly asked that the Auto-Lite Corporation be brought in as a party defendant, that it be directed to fill its orders from the Overland Company, and that it be restrained from keeping its factory closed, and ordered to obtain the necessary force of employees to enable it to execute such orders. It also asked for restraint of the labor and union defendants with respect to the Auto-Lite Company strike. On the same day an order was issued restraining interference with the Auto-Lite plant. Two days later, on plaintiff's application, an order was made directing the Overland Company to resume operations, and on its representation of inability to do so, or to comply without protection, the court appointed a special chief officer to take charge of and enforce the opening and operation of the Overland plant and to enforce the restraining order as to both the Overland and Auto-Lite plants. Under this order the Overland and Auto-Lite plants were opened on June 13th, and have remained open and in operation ever since.

A few days later the Overland Inc. filed its answer and cross-bill, likewise specifically admitting and averring each of the facts set up in the original bill of complaint, including the alleged public statement of the Overland Inc. regarding the production for the year in question, and plaintiff's information that it was made with the knowledge and consent of the Overland, etc., and praying for restraining order and injunction against the labor and union defendants. The next day the Auto-Lite Corporation filed its answer and cross-bill, admitting and adopting the allegations in the Overland's answer and cross-bill relating to the Auto-Lite Corporation, setting out in great detail the history of the strike directed against its plant, its inability to operate without protection, its failure to receive the same and that it, to-

defendants and each of them have failed to take such steps or any of them and said defendant the Willys-Overland Company has again ceased the manufacture of automobiles.

gether with many other manufacturers of automobiles, had exhausted their supplies of electric lighting, starting, and ignition systems, and asking for restraining order and final injunction in substantially the terms contained in the orders relating to the Overland. On July 1st both the original bill and the cross-bill of the Overland Company were taken as confessed by each of the labor and union defendants for lack of plea, answer or demurrer, and on August 2d the cross-bills of the Overland Inc. and the Auto-Lite Company were likewise taken as confessed for the same reason. On January 15, 1920, motions of the labor and union defendants to dismiss the original suit for lack of jurisdiction, and because the case had not been continued from the April term to the October term of the District Court, were overruled, and on motions of the plaintiff, the Overland Inc., and the Willys Corporation (which had succeeded to the Electric Auto-Lite Corporation), a permanent injunction was granted substantially in the terms of the temporary injunction, except that picketing was forbidden.[2] This appeal is by the union and labor defendants from that order of permanent injunction.

The grounds of jurisdiction relied on by plaintiff are diversity of citizenship and that the bill is directed against a conspiracy in violation of the Sherman Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830). Appellants assail the order appealed from both for lack of jurisdiction in the District Court to make it and upon the merits.

Passing the question of alignment of the parties and collusion as affecting diversity of citizenship, if the validity of the order in question is to be tested solely by the allegations of fact in the original bill (as admitted by appellants), the right to the relief granted would be open to question. The strike was at the Overland Company's plant. Plaintiff had no contract with that company; its contract was with the Overland Inc. alone. The bill does not allege any legal or equitable identity between the Overland Company and the Overland Inc., or any control by one of them over the other. We are cited to no authority which, to our minds, clearly sustains plaintiff's right to maintain this suit on the ground of the existence of a special interest in the subject-matter of the strike. So far as brought to our attention, in each of the cases most strongly supporting the right of a third party to enjoin strike operations there was a direct and immediate relation between the plaintiff and the one against whom the strike was conducted.[3] These authorities would be pertinent to a suit for relief by the Overland Inc. against the Overland Company, or to one by plaintiff against the Overland Inc.; but plaintiff's case here is one step farther away. It scarcely need be said that, if plaintiff's interest is too indirect and remote to enable it to enjoin the strike because gen-

---

[2] For the opinion of the District Court, see Dail-Overland Co. v. Willys-Overland, 263 Fed. 171.

[3] See Chesapeake & Ohio Coal Agency v. Fire Creek Coal & Coke Co. (C. C.) 119 Fed. 942; Carroll v. Chesapeake & O. Coal Agency Co. (C. C. A. 4) 124 Fed. 305, 61 C. C. A. 49; Ex parte Haggerty (C. C.) 124 Fed. 441; Fortney v. Carter (C. C. A. 4) 203 Fed. 454, 121 C C. A. 514; Jennings v. United States (C. C. A. 8) 264 Fed. 399.

erally an unjust interference with its rights, the same consideration would extend to the claim of violation of the Anti-Trust Act. But we find it unnecessary to pass upon this question, for the reason that, in our opinion, the District Court had jurisdiction otherwise to make the order in question.

[1] The original bill did not on its face show a lack of jurisdiction of the District Court in respect of either parties or subject-matter, or collusion between plaintiff and the Overland or the Overland Inc., or either of them. It thus did not, as matter of law, show that the Overland Company was bound to be aligned as a party plaintiff and thus defeat jurisdiction on the ground of diverse citizenship, in view of the allegation of adverse attitude on the part of the Overland Company in closing its plant and refusing to reopen it in spite of plaintiff's demand that it do so. This was at least a claim of adverse relation, and we think it cannot be said, as matter of law, that the Overland Company had no interest in letting its contracts be partially unfulfilled rather than endure the stress and danger of a strike characterized by the bill as creating a "reign of terror." So much for the jurisdiction over parties.

[2, 3] As to the subject-matter: The bill asserted a right and interest in plaintiff to compel the carrying out by the Overland of its contract with the Overland Inc. This assertion presented a justiciable question, whether or not we may think plaintiff was right in its contention. Although a court may not have jurisdiction to proceed to judgment, it may have jurisdiction to take cognizance of a case in the first instance, and until facts showing lack of jurisdiction appear. In this juncture we think the Overland Inc., which was under direct contract relations with both plaintiff and the Overland, could (in the absence of collusion) properly file a cross-bill to restrain unlawful obstruction to the performance of its contract with the Overland Company, through the alleged unlawful strike directed against that Company. The Overland Inc. had an interest sufficiently direct to have enabled it to file an original bill. In such case there would prima facie be diversity of citizenship; and this would be so had the Overland Inc. joined with plaintiff in filing the original bill. Again assuming the absence of collusion, there was no lack of jurisdiction in the District Court to entertain the cross-bill of Overland Inc. City of Toledo v. Toledo Ry. & Lt. Co. (C. C. A. 6) 259 Fed. 450, 170 C. C. A. 426; Springfield Co. v. Barnard Co. (C. C. A. 8) 81 Fed. 261, 263 et seq., 26 C. C. A. 389.

[4] As to collusion: While there are circumstances from which it might be surmised,[4] they are not such as to establish it; not only in the absence thereof outside of what may be thought disclosed by

---

[4] For example: The original bill of complaint and the answer of the Auto-Lite Company are indorsed by the same solicitors; the respective answers and cross-bills of the Overland Company and the Overland Inc. are verified by the same person as vice president of each corporation, and also indorsed by the same solicitors; and the bill and both answers and cross-bills were filed in rapid succession, the bill on June 5th, the Overland Company's pleading on June 10th, and that of the Overland Inc. on June 11th.

the pleadings, but in view of the express action of defendants, in allowing not only the bill of complaint, but each of the cross-bills, to be taken as confessed, which, of course, amounted to an admission of the truth of the pertinent facts there alleged. The mere fact that the Overland and the Overland Inc. had the same vice president did not, standing alone, show identity of interest between the two companies. West v. United States, 258 Fed. 413, 417, 418, and cases there cited. The case is thus not brought within Niles Co. v. Iron Molders' Union, 254 U. S. 77, 41 Sup. Ct. 39, 65 L. Ed. ——, nor is it within Davis v. Henry (C. C. A. 6) 266 Fed. 261. See, also, Blair v. Chicago, 201 U. S. 400, 448, 26 Sup. Ct. 427, 50 L. Ed. 801; Toledo v. Toledo Ry. & Lt. Co. (C. C. A. 6) 259 Fed. at pp. 455, 456, 170 C. C. A. 426. This conclusion makes it unnecessary to consider in this connection the effect of the Overland Company's cross-bill. If the order in question was supported by either the original bill or the cross-bill of the Overland Company Inc., or both, it is immaterial whether or not relief could have been granted under the Overland Company's cross-bill.

[5] As to the merits: The allegations of the original bill, as well as those of both cross-bills (which must be regarded as admitted by appellants), state a flagrant case of unlawful interference with the operation of the Overland plant, and of long-existing conditions of intimidation, violence, and bloodshed, justifying relief so far as the court below had jurisdiction to give it. Hitchman Co. v. Mitchell, 245 U. S. 229, 38 Sup. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461; Eagle Glass Co. v. Rowe, 245 U. S. 275, 38 Sup. Ct. 80, 62 L. Ed. 286. Taking, as we must, the allegations of fact contained in the bill and cross-bills at their face value, such of the complaining parties as had a sufficient interest in the Overland's operation were entitled to relief, at least on the ground of an unlawful interference with property rights. On this subject we cannot speculate as to what the result would have been, either upon the question of collusion or otherwise, had the case gone to trial upon its merits. This conclusion makes it unnecessary to consider the question of alleged interference with interstate commerce.

Appellant presents a large number of formal objections to the relief given, whose nature will sufficiently appear from what is said in disposing of them.

[6] We see no merit in the proposition that relief should be denied plaintiff, for the reason that its contract with the Overland Inc. was revocable at will. Neither party in fact attempted to revoke it, nor was it obliged to do so. Moreover, the results of such cancellation might well have proven disastrous to plaintiff's business.[5]

---

[5] The business, whose good will was alleged to be established, was the handling of Overland automobiles and parts. In case of cancellation, plaintiff would have been obliged to sell back to the Overland Inc. all new automobiles of current models which plaintiff might own or have in its possession, as well as all new parts, subject under the policy of the Overland Inc. to return for credit, and also to turn over all outstanding sales agreements between plaintiff and dealers, subject to the latter's consent.

[7] The fact that the contract term had expired when the order appealed from was made is not conclusive against the right of injunction. It does not affirmatively appear that plaintiff had by that time succeeded in obtaining the full quota of automobiles and parts which its contract filled for. The bill had been taken as confessed more than five months before the final order was made, and several months before plaintiff's contract had expired. Indeed, the record seems to suggest that some of the testimony taken in connection with the final order is not in the record before us.

[8] Nor do we think the trial court lost jurisdiction to make the final order for lack of formal compliance with equity rule 57 (198 Fed. xxxiv, 115 C. C. A. xxxiv), which provides that after a cause is placed on the trial calendar it shall not be continued beyond the term save in exceptional cases by order of the court, upon good cause shown by affidavit. The April term seems to have expired on October 27, 1919. Previous to that time not only the original bill, but both cross-bills had been taken as confessed. No issue as to the facts longer remained; under equity rule 56 the cause goes on the trial calendar on the expiration of the time for taking depositions, which under rule 47 (198 Fed. xxxi, 115 C. C. A. xxxi) runs from the time the cause is at issue. Moreover, on October 27, 1919, the court made a formal order continuing to the next term of court "all cases, motions and matters now pending in this court and not otherwise disposed of."

[9-12] It is settled that the right of an employer to keep his business running is a property right under section 20 of the Clayton Act (Comp. St. § 1243d), notwithstanding the existence of a strike. Hitchman Co. v. Mitchell, 245 U. S. 229, 38 Sup. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461; King v. Weiss and Lesh Co. (C. C. A. 6) 266 Fed. 257, 260. The allegations of the original bill (as well as those of both cross-bills) as to the irresponsibility of appellants sufficiently answer the objection of adequate remedy at law. The allegations respecting the damage which plaintiff would suffer by continuance of the strike indicate prima facie that the jurisdictional amount is involved. The objection that peaceful persuasion and peaceful picketing were improperly forbidden by the final order is, to our minds, sufficiently answered by the considerations announced by the trial judge, viz. that there was no longer a controversy between the Overland Company and its employees respecting terms and conditions of employment; that the plant was then running at full capacity and full production; that the strike had then long ceased to exist, except for certain annoying manifestations on the part of a comparatively few people; and that none of those so engaged could longer be regarded as employees. We cannot say that the order complained of violates section 6 of the Clayton Act (Comp. St. § 8835f).

[13] We find no reversible error in the provision forbidding interference with the operation of the Auto-Lite plant. The cross-bill of that company (which was a Delaware corporation) showed on its face diversity of citizenship, and stated a case justifying relief from interference with the Overland operation, provided the Auto-Lite Com-

pany was properly made a defendant. The pleading of the Overland, confessed by appellants, asserted the necessity of relief as to the Auto-Lite Company if the Overland was to be operated. The cross-bill of the Auto-Lite, also taken as confessed, after the restraining order of June 10th had been made, showed its inability to perform its contracts with the Overland. Its protection from interference was thus to that extent, at least, germane to the subject-matter of the original bill and the other cross-bills, and we think there was no error in making the Auto-Lite a defendant for the purpose stated. Neither the Auto-Lite restraining order, nor the order directing the operation of that plant by the special officer were ever complained of by appellants, unless by the general motion before mentioned (presented after the making of the motion for permanent injunction) to dismiss the entire case for lack of jurisdiction and alleged lack of proper continuance. The considerations applicable to the injunction relating to the Overland operation seem to pertain equally to the Auto-Lite.

Our conclusion is that, upon the record presented here, the final order (which is the only action by the court which is appealed from) should not be reversed. The order of the District Court appealed from is affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes